## DOBSON & Another v. HARTFORD CARPET COMPANY.

## SAME v. BIGELOW CARPET COMPANY.

## SAME v. SAME.

APPEALS FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF PENNSYLVANIA.

Argued April 2, 1885.—Decided April 20, 1885.

In a suit in equity, for the infringement of a patent for a design for carpets, where no profits were found to have been made by the defendant, the Circuit Court allowed to the plaintiff, as damages, in respect to the yards of infringing carpets made and sold by the defendant, the sum per yard which was the profit of the plaintiff in making and selling carpets with the patented design, there being no evidence as to the value imparted to the carpet by the design : *Held*, that such award of damages was improper, and that only nominal damages should have been allowed.

Where a bill founded on a design patent with a claim for a pattern and separate claims for each of its parts, is taken as confessed, it alleging infringement of the "invention," the patent will be held valid for the purposes of the suit.

The joinder of such claims in one patent does not *per se* invalidate the patent, or any claim, at the objection of a defendant.

A claim of "the design for a carpet, substantially as shown," refers to the description and the drawing and is valid.

An objection that a patent for a design is for an aggregation of old ornaments, and embodies no "invention," is concluded, where the bill alleges infringement of the "invention," and is taken as confessed.

Where the master reported no profits, and nominal damages, in a suit in equity for the infringement of a patent for a design, and, on exception by the plaintiff, the Circuit Court allowed a sum for damages, and this court reversed its decree, the plaintiff was allowed costs in the Circuit Court to and including the interlocutory decree, and the defendant was allowed his costs after such decree.

These were all suits in equity for alleged infringements of patents.

The facts are stated in the opinion of the court.

*Mr. Hector T. Fenton* (*Mr. Richard P. White* was with him), for appellants.

*Mr. Arthur v. Briesen* for appellee.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

These are three suits in equity, brought in the Circuit Court of the United States for the Eastern District of Pennsylvania, against John Dobson and James Dobson, trading as John and James Dobson and as "The Falls of Schuylkill Carpet Mills." No. 1 is brought by the Hartford Carpet Company, for the infringement of design letters patent No. 11,074, granted March 18, 1879, to the plaintiff, as assignee of Winthrop L. Jacobs, for three and one half years, for a design for carpets. No. 2 is brought by the Bigelow Carpet Company, for the infringement of design letters patent No. 10,778, granted August 13, 1878, to the plaintiff, as assignee of Hugh Christie, for three and one half years, for a design for carpets. No. 3 is brought by the Bigelow Carpet Company, for the infringement of design letters patent No. 10,870, granted October 15, 1878, to the plaintiff, as assignee of Charles Magee, for three and one half years, for a design for carpets.

No. 1 was commenced on the 26th of April, 1879, and Nos. 2 and 3 on the 7th of May, 1879. In No. 1 and No. 3 the defendants appeared by a solicitor, but did not plead, answer or demur to the bill, and it was taken as confessed, in each suit, on the 11th of July, 1879; and, on the 2d of September, 1879, an interlocutory decree was entered in each suit, awarding a perpetual injunction and an account of profits and damages.

In No. 2, an answer was filed on the 3d of September, 1879, denying infringement and setting up want of novelty. A replication was filed, and, on the 5th of November, 1879, a preliminary injunction was granted. Testimony was taken, and, on April 23, 1880, on final hearing, a decree was made for a perpetual injunction and an account of profits and damages. Some testimony on the accounting in Nos. 1 and 3 was taken in November, 1879, but most of the evidence before the master was taken in the three suits at the same time, in June, 1880.

In No. 1, the master filed a report on January 18, 1881, setting forth that the plaintiff, before the master, waived all claim for profits and limited its claim to the damages it had suffered by the infringement; that the defendants had sold 20 pieces, of 50 yards each, of carpet containing the patented design; that the plaintiff claimed $13,400 damages, being 67 cents a yard, on 400 pieces of carpet, of 50 yards each, as being the decrease of the plaintiff's sales caused by the infringement, estimating the cost to the plaintiff of making and selling the carpet at $1.08 per yard, and its selling price at $1.75 per yard; and that the master had rejected that claim, as founded on inadmissible evidence, and a further claim of $3,000 damages, for expenses caused to the plaintiff, by the infringement, in getting up other designs, and changing its looms to other carpets. The report was for six cents damages. The plaintiff excepted to the report because it did not find profits to have been made by the defendants, and did not report more than nominal damages. The court sustained the exceptions, and decreed to the plaintiff $737, being for 20 pieces of infringing carpet made and sold by the defendants, at 55 yards per piece, or 1,100 yards, at 67 cents per yard, as the plaintiff's profit per yard on carpet of the patented design. The final decree was

for $737 and costs, and a perpetual injunction. The defend-
ants have appealed.

In No. 2, the master filed a report on January 18, 1881, set-
ting forth that the plaintiff, before the master, waived all claim
for profits, and limited its claim to the damages it had suffered
by the infringement; that no testimony had been taken show-
ing the amount of the defendants' sale of the infringing car-
pet; that the plaintiff claimed $11,250 damages, being 75 cents
a yard, on 300 pieces of carpet, of 50 yards each, as being the
decrease of the plaintiff's sales, caused by the infringement,
estimating the cost to the plaintiff of making and selling the
carpet at $1.10 per yard, and his selling price at $1.85 per
yard ; and that the master had rejected that claim as not sus-
tained by the evidence, and also a further claim for expense
caused to the plaintiff by the infringement, in getting up an-
other design, and in resetting its looms to manufacture the
same. The report was for six cents damages. The plaintiff
excepted to the report for not finding more than nominal dam-
ages. The court sustained the exceptions, and decreed to the
plaintiff $750, being for 20 pieces of infringing carpet made by
the defendants, at 50 yards per piece, or 1,000 yards, at 75
cents per yard, as the plaintiff's profit per yard on carpet of
the patented design. The final decree was for $750 and costs,
and a perpetual injunction. The defendants have appealed.

In No. 3, the master filed a report on January 18, 1881, set-
ting forth that the plaintiff, before the master, waived all claim
for profits, and limited its claim to the damages it had incurred
by the infringement; that the defendants had sold 31 pieces,
amounting to 1,684¼ yards, of carpet containing the patented
design; that the plaintiff claimed $3,750 damages, being 75
cents a yard on 5,000 yards of carpet, as being the decrease of
the plaintiff's sales, caused by the infringement, estimating the
plaintiff's profit on making and selling the carpet at 75 cents
per yard ; and that the master had rejected that claim as not
sustained by the evidence, and also a further claim for the cost
of getting up another design to replace the one infringed. The
report was for six cents damages. The plaintiff excepted to
the report, because it did not find profits to have been made by

.the defendants, and did not report more than nominal damages. The court sustained the exceptions, and decreed to the plaintiff $1,312.50, being for 35 pieces of infringing carpet made and sold by the defendants, at 50 yards per piece, or 1,750 yards, at 75 cents per yard, as the plaintiff's profit per yard, on carpet of the patented design. The final decree was for $1,312.50 and costs, and a perpetual injunction. The defendants have appealed.

The Circuit Court proceeded on the ground, as stated in its decision, 10 Fed. Rep. 385, that it was to be presumed that the defendants' carpets displaced in the market an equal quantity of the plaintiff's carpets; and that the profits which the plaintiffs would have made on that quantity of carpets was the measure of their damages. It rejected the claims for losses for any greater decline in the plaintiff's sales, and on looms, as "too remotely connected with the defendants' acts as their supposed cause," and "too speculative in their character," to be allowed.

Leaving out of view all question as to the presumption that the plaintiffs would have made and sold, in addition to the carpets of the patented designs which they did make and sell, the infringing carpets which the defendants made and sold, which are alleged to have been of poorer quality and cheaper in price, it is plain that the price per yard allowed as damages was the entire profit to the plaintiffs, per yard, in the manufacture and sale of carpets of the patented designs, and not merely the value which the designs contributed to the carpets. There was no evidence as to that value.

It is provided by Rev. Stat. § 4921, that, in a suit in equity for the infringement of a patent, the plaintiff may, on a decree in his favor, recover the damages he has sustained, in addition to the profits to be accounted for by the defendant, such damages to be assessed by the court, or under its direction, and with the same power to increase the damages, in the discretion of the court, as in the case of verdicts; and the damages intended are "the actual damages sustained," in the language of § 4919. *Root* v. *Railway Co.*, 105 U. S. 189, 212. By § 4933 all these provisions apply to patents for designs.

This court has, in a series of decisions, laid down rules as to what are to be regarded as " profits to be accounted for by the defendant," and what as " actual damages," in suits for the infringement of patents; and no rule has been sanctioned which will allow, in the case of a patent for a design for ornamental figures created in the weaving of a carpet, or imprinted on it, the entire profit from the manufacture and sale of the carpet, as profits or damages, including all the profits from the carding, spinning, dyeing and weaving, thus regarding the entire profits as due to the figure or pattern, unless it is shown, by reliable evidence, that the entire profit is due to the figure or pattern. It is a matter of common knowledge, that there is an infinite variety of patterns in carpets, and that, between two carpets, of equal cost to make, and equal merit as to durability of fabric and fastness of color, each with a pattern pleasing to the taste, one having a design free to be used, and the other a design protected by a patent, the latter may or may not command in the market a price larger than the former. If it does, then the increased price may be fairly attributed to the design; and there is a solid basis of evidence for profits or damages. But, short of this, under the rules established by this court, there is no such basis. The same principle is applicable as in patents for inventions. The burden is upon the plaintiff, and, if he fails to give the necessary evidence, but resorts, instead, to inference and conjecture and speculation, he must fail for want of proof. There is another suggestion, of great force. The carpet with the infringing design may be made on an infringing loom, and various infringing processes or mechanisms for carding, spinning or dyeing may be used in making it, and, if the entire profit in making and selling it is necessarily to be attributed to the pattern, so it may as well, on principle, be attributed to each of the other infringements, and a defendant might be called on to respond many times over for the same amount. There is but one safe rule—to require the actual damages or profits to be established by trustworthy legal proof.

It is not necessary to cite at length from the cases decided by this court on the subject. It is sufficient to refer to them,

as follows: *Livingston* v. *Woodworth*, 15 How. 546; *Seymour* v. *McCormick*, 16 How. 480; *Mayor of New York* v. *Ransom*, 23 How. 487; *Mowry* v. *Whitney*, 14 Wall. 620; *Philp* v. *Nock*, 17 Wall. 460; *Littlefield* v. *Perry*, 21 How. 205; *Birdsall* v. *Coolidge*, 93 U. S. 64; *Cawood Patent*, 94 U. S. 695; *Blake* v. *Robertson*, 94 U. S. 728; *Garretson* v. *Clark*, 111 U. S. 127; *Black* v. *Thorne*, 111 U. S. 122. The true rule, which applies also to a patent for a design, was formulated thus, by this court, in *Garretson* v. *Clark:* "The patentee must, in every case, give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features, and such evidence must be reliable and tangible, and not conjectural or speculative; or he must show, by equally reliable and satisfactory evidence, that the profits and damages are to be calculated on the whole machine, for the reason that the entire value of the whole machine, as a marketable article, is properly and legally attributable to the patented feature." The case of *Manufacturing Co.* v. *Cowing*, 105 U. S. 253, was a case falling within the last clause of the rule thus stated, and was an exceptional case, as was stated by the Chief Justice, in the opinion. The general rule was recognized in that case, and the exception was made, in regard to the oil-well gas pump there involved, because there was only a limited and local demand for it, which could not be, and was not, supplied by any other pump.

The rule in question is even more applicable to a patent for a design than to one for mechanism. A design or pattern in ornamentation or shape appeals only to the taste through the eye, and is often a matter of evanescent caprice. The article which embodies it is not necessarily or generally any more serviceable or durable than an article for the same use having a different design or pattern. Approval of the particular design or pattern may very well be one motive for purchasing the article containing it, but the article must have intrinsic merits of quality and structure, to obtain a purchaser, aside from the pattern or design; and to attribute, in law, the entire profit to the pattern, to the exclusion of the other merits, unless it is shown, by evidence, as a fact, that the profit ought to be so at-

tributed, not only violates the statutory rules of "actual damages" and of "profits to be accounted for," but confounds all distinctions between cause and effect.

The decrees must, therefore, all of them be reversed, as to the damages awarded.

As to No. 1, though the bill was taken as confessed, the defendants take the point that the patent is void on its face because it has nineteen claims. It has a claim for an entire pattern, and then a separate claim for each of eighteen component parts making up the whole. The bill alleges infringement by the making and selling of the "invention" and of carpets containing the "invention." Even if the defendants can raise this point after a decree *pro confesso*, (see *Thomson* v. *Wooster*, *ante*, 104,) the patent must be held valid at least for the purposes of this case.

In No. 2, the question of proof of making and selling by the defendants before suit brought is raised. But we think, on the pleadings and all the proofs, including the defendants' letter of April 13, 1880, the case is made out. The point is also taken, that this patent is void because it has a claim for the entire pattern and three claims for each of three constituent parts of it. No such point is taken in the answer, which speaks of the patent as one for a single design. If the Patent Office, in view of the question of fees, and for other reasons, grants a patent for an entire design, with a claim for that, and a claim for each one of various constituent members of it, as a separate design, we see no objection to it, leaving the novelty of the whole and of each part, and the validity of the patent, open to contestation. The mere joinder of such claims in one grant does not *per se* invalidate the patent or any particular claim, at the objection of a defendant.

In No. 3. objection is taken to the patent because it claims "the design for a carpet, substantially as shown." As the bill is the same in form as that in No. 1. and was taken *pro confesso*, the patent is valid at least for the purposes of this case. Aside from this, we see no good objection to the form of the claim. It refers to the description as well as the drawing, in using the word "shown." The objection is also made, as to No. 3,

that the patent is for an aggregation of old ornaments, and embodies no invention. This objection is concluded, for this case, by the language of the bill and the decree *pro confesso.*

*The final decrees in all of the suits are reversed, and the cases are remanded to the Circuit Court, with directions to disallow the award of damages in each suit, and to award six cents damages in each, and to allow to the defendants a recovery in each case for their costs after interlocutory decree, and to the plaintiff in each case a recovery for its costs to and including interlocutory decree.*