# United States Court of Appeals for the Federal Circuit

_____

**SPORT DIMENSION, INC., A CALIFORNIA CORPORATION,**
*Plaintiff-Appellee*

**v.**

**THE COLEMAN COMPANY, INC., A DELAWARE CORPORATION,**
*Defendant-Appellant*

_____

2015-1553

_____

Appeal from the United States District Court for the Central District of California in No. 2:14-cv-00438-BRO-MRW, Judge Beverly Reid O'Connell.

_____

Decided: April 19, 2016

_____

YURI MIKULKA, Manatt, Phelps & Phillips, LLP, Costa Mesa, CA, argued for plaintiff-appellee. Also represented by MICHAEL I. ROTHWELL, Los Angeles, CA.

MICHAEL R. ANNIS, Husch Blackwell LLP, St. Louis, MO, argued for defendant-appellant. Also represented by JOANN TRACY SANDIFER.

_____

Before MOORE, HUGHES, and STOLL, *Circuit Judges.*

STOLL, *Circuit Judge*.

Coleman Company, Inc. appeals from a stipulated judgment of noninfringement entered by the United States District Court for the Central District of California. Coleman challenges the district court's claim construction on which the stipulated judgment was based and its exclusion of Coleman's expert. For the reasons stated below, we vacate the judgment, affirm the court's exclusion of Coleman's expert, and remand for proceedings consistent with this opinion.

## BACKGROUND

Coleman is an outdoor sporting equipment company that sells an array of products, including personal flotation devices. Coleman owns United States Design Patent No. D623,714 ("D'714 patent"). It claims "[t]he ornamental design for a personal flotation device," as shown in Figures 1 and 2 below.



D'714 patent Figs. 1, 2. The D'714 patent generally discloses a personal flotation device with two arm bands connected to a torso piece. The torso piece is flat on its back and tapers toward a connecting strap on its sides.

Sport Dimension is a sports equipment and apparel company that sells water-sports-related equipment, including its Body Glove® line of personal flotation devices. Sport Dimension's Body Glove® Model 325 is the accused device and is shown below.





Supplemental Appendix 1474–75. Sport Dimension's accused personal flotation devices, like Coleman's design, have two armbands connected to a torso piece. But, unlike Coleman's design, the torso section in the Body Glove® device extends upwards to form a vest that goes over a person's shoulders.

Sport Dimension filed a declaratory judgment action in the Central District of California requesting judgment that it did not infringe the D'714 patent and that the patent is invalid. The district court issued two rulings that we now review.

First, the court excluded the testimony of Coleman's expert, Peter Bressler. Sport Dimension had argued that Mr. Bressler was not qualified to testify on the functionality of the D'714 patent's design, and the court agreed. It

explained that, while Mr. Bressler "appears to possess substantial experience in the field of industrial design," Coleman "does not dispute—and Mr. Bressler's deposition testimony makes it quite clear—that Mr. Bressler has no substantive experience in the narrower field of *personal flotation device design*." Joint Appendix ("J.A.") 12 (emphasis in original). Because the court viewed Mr. Bressler's experience as insufficient to opine on the contested issues as an expert, it excluded his testimony.

Second, the district court adopted Sport Dimension's proposed claim construction, as follows:

> The ornamental design for a personal flotation device, as shown and described in Figures 1–8, except the left and right armband, and the side torso tapering, which are functional and not ornamental.

J.A. 3. Notably, this construction eliminates several features of Coleman's claimed design, specifically the armbands and the side torso tapering. The court "found that the armbands, the armband attachments, the shape of the armbands, the tapering of the armbands, and the tapering of the side torso were all elements that serve a functional rather than ornamental purpose in the D'714 patent." J.A. 3. In light of the court's claim construction order, Coleman moved for entry of judgment of noninfringement in favor of Sport Dimension so that it could appeal the claim construction. The court entered judgment, and Coleman timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## DISCUSSION

### A.

We review the district court's ultimate claim construction of a design patent de novo. *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1333 (Fed. Cir. 2015) (citing *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct.

831, 841 (2015)).  We review any factual findings underlying the construction for clear error.  *Id.*

Words cannot easily describe ornamental designs.  *See Dobson v. Dornan*, 118 U.S. 10, 14 (1886) (explaining that a claim "is better represented by the photographic illustration than it could be by any description, and a description would probably not be intelligible without the illustration").  A design patent's claim is thus often better represented by illustrations than a written claim construction.  *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679 (Fed. Cir. 2008) (en banc).  Also, detailed verbal claim constructions increase "the risk of placing undue emphasis on particular features of the design and the risk that a finder of fact will focus on each individual described feature in the verbal description rather than on the design as a whole."  *Id.* at 680.

Even so, a district court may use claim construction to help guide the fact finder through issues that bear on claim scope.  *Id.*  We have often blessed claim constructions, for example, where the court helped the fact finder "distinguish[] between those features of the claimed design that are ornamental and those that are purely functional."  *Id.* (citing *OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997)).  Of course, a design patent cannot claim a purely functional design—a design patent is invalid if its overall appearance is "dictated by" its function.  *Id.* at 668.  But as long as the design is not primarily functional, "the design claim is not invalid, even if certain elements have functional purposes."  *Ethicon Endo-Surgery,* 796 F.3d at 1333 (citing *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1293–94 (Fed. Cir. 2010)).  That is because a design patent's claim protects an article of manufacture, which "necessarily serves a utilitarian purpose."  *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1123 (Fed. Cir. 1993).  So a design may contain both functional and ornamental elements, even though the scope of a design

patent claim "must be limited to the ornamental aspects of the design." *Ethicon Endo-Surgery*, 796 F.3d at 1333. "Where a design contains both functional and non-functional elements, the scope of the claim must be construed in order to identify the non-functional aspects of the design as shown in the patent." *OddzOn Prods.*, 122 F.3d at 1405.

In *OddzOn*, for example, we considered a design patent on a rocket-shaped football and endorsed the district court's construction that distinguished between functional and ornamental aspects of the design. The design patent disclosed a football with a large tail fin that added stability for the ball in flight. *Id.* at 1406. The fins also produced an "overall 'rocket-like' appearance of the design." *Id.* at 1405. We agreed with the district court's finding that the fins were functional. Nevertheless, we approved of the court's construction that took the fins into account. We praised the court for "carefully not[ing] the ornamental features that produced the overall 'rocket-like' appearance . . . [and] properly limit[ing] the scope of the patent to its overall ornamental visual impression, rather than to the broader general design concept of a rocket-like tossing ball." *Id.*

We followed a similar line of analysis in *Richardson*. 597 F.3d at 1293–94. The case concerned a multi-function tool described in the patent as "compris[ing] several elements that are driven purely by utility," including a hammer, crowbar, and stud climbing tool. *Id.* at 1294. Those elements—i.e., the hammer's flat head, the crowbar's elongated shape, and the stud climbing tool's jaw-like shape—were well known in the art, and their basic design was dictated by their respective functional purposes. *Id.* But there were nevertheless ornamental aspects of the design of those elements. The district court had explained that the claim "protect[ed] the ornamental aspects of Richardson's design, which include, among other things, the standard shape of the hammer-head, the

diamond-shaped flare of the crow-bar and the top of the jaw, the rounded neck, the orientation of the crowbar relative to the head of the tool, and the plain, undecorated handle." *Richardson v. Stanley Works, Inc.*, 610 F. Supp. 2d 1046, 1050 (D. Ariz. 2009), *aff'd*, 597 F.3d 1288. Our court agreed with the district court's approach that limited the claim to these ornamental aspects of the otherwise functional elements. *Richardson*, 597 F.3d at 1293–94. Under this construction, the claim in *Richardson* did not protect the functional aspects of the design. Rather, the court's construction properly ensured that the claim provided protection, albeit narrow, over those aspects of the tool that were ornamental.

In *Ethicon Endo-Surgery*, we construed a design patent on a surgical instrument. We explained that the open trigger, torque knob, and activation button of the instrument were functional. *Ethicon Endo-Surgery, Inc.*, 796 F.3d at 1334. And we construed the claim to eliminate the functional aspects of the design but to permit coverage of the ornamental aspects of the design. In rejecting the district court's claim construction, we disagreed with its conclusion that the claim had no scope. *Id.* While we agreed that certain elements of the device were functional, their functionality did not preclude those elements from having protectable ornamentation. We explained that, "although the Design Patents do not protect the general design concept of an open trigger, torque knob, and activation button in a particular configuration, they nevertheless have some scope—the particular ornamental designs of those underlying elements." *Id.*

In *OddzOn*, *Richardson*, and *Ethicon*, we construed design patent claims so as to assist a finder of fact in distinguishing between functional and ornamental features. But in no case did we entirely eliminate a structural element from the claimed ornamental design, even though that element also served a functional purpose.

The district court's construction in this case conflicts with that principle of design patent claim construction because it eliminates whole aspects of the claimed design. In its construction, the district court improperly excluded the left and right armband and the torso side tapering:

> The ornamental design for a personal flotation device, as shown and described in Figures 1–8, *except the left and right armband, and the side torso tapering*, which are functional and not ornamental.

J.A. 3 (emphasis added). The court explained that the armbands and tapered torso "serve a functional rather than ornamental purpose," and thus excluded them from the claim scope. *Id.*

Coleman disputes the court's ultimate construction and its finding that the armbands and tapered torso are functional. While we agree with Coleman that the court's ultimate construction was improper under our law, we disagree with Coleman's assertion that the armbands and side torso tapering do not serve a functional purpose. As the district court correctly pointed out, Coleman's armbands and tapered side torso designs meet several of the factors we announced in *PHG Technologies, LLC v. St. John Cos.,* for determining whether a design claim was dictated by function, including:

> whether the protected design represents the best design; whether alternative designs would adversely affect the utility of the specified article; whether there are any concomitant utility patents; whether the advertising touts particular features of the design as having specific utility; and whether there are any elements in the design or an overall appearance clearly not dictated by function.

469 F.3d 1361, 1366 (Fed. Cir. 2006) (quoting *Berry Sterling Corp. v. Pescor Plastics, Inc.*, 122 F.3d 1452, 1455 (Fed. Cir. 1997)). Although we introduced these factors to assist courts in determining whether a claimed design was dictated by function and thus invalid, they may serve as a useful guide for claim construction functionality as well.

Applied here, the *PHG* factors indicate that the design patent's armbands and side torso tapering serve a functional purpose. For example, the district court examined alternative personal flotation device designs and concluded that Coleman's armband and torso tapering represented the best available design for a personal flotation device. The court found that Coleman filed a co-pending utility patent disclosing the design patent's armbands and torso tapering and touting the utility of those features. And it found Coleman to have promoted the particular utility of the armbands and tapered torso in its advertisements. We do not disagree with these findings. Nor do we disagree with the district court's conclusion that the armbands and tapered side torso serve a functional purpose.

Nonetheless, even though we agree that certain elements of Coleman's design serve a useful purpose, we reject the district court's ultimate claim construction. The district court eliminated the armbands and side torso tapering from the claim entirely, so its construction runs contrary to our law. Here, as in *Ethicon*, "the district court's construction of the Design Patents to have no scope whatsoever fails to account for the particular ornamentation of the claimed design and departs from our established legal framework for interpreting design patent claims." *Ethicon Endo-Surgery*, 796 F.3d at 1334. Moreover, design patents protect the overall ornamentation of a design, not an aggregation of separable elements. *Richardson*, 597 F.3d at 1295 (noting that "discounting of functional elements must not convert the overall in-

fringement test to an element-by-element comparison"). By eliminating structural elements from the claim, the district court improperly converted the claim scope of the design patent from one that covers the overall ornamentation to one that covers individual elements. Here, the district court erred by completely removing the armbands and side torso tapering from its construction.

We thus look to the overall design of Coleman's personal flotation device disclosed in the D'714 patent to determine the proper claim construction. The design includes the appearance of three interconnected rectangles, as seen in Figure 2. It is minimalist, with little ornamentation. And the design includes the shape of the armbands and side torso tapering, to the extent that they contribute to the overall ornamentation of the design. As we discussed above, however, the armbands and side torso tapering serve a functional purpose, so the fact finder should not focus on the particular designs of these elements when determining infringement, but rather focus on what these elements contribute to the design's overall ornamentation. Because of the design's many functional elements and its minimal ornamentation, the overall claim scope of the claim is accordingly narrow. *See Ethicon Endo-Surgery*, 796 F.3d at 1334 (endorsing a "limited" claim scope for a design with functional elements).

We therefore reject the district court's claim construction, vacate the stipulated judgment of noninfringement, and remand for consideration of infringement and, if necessary, validity consistent with the proper claim construction. In turn, nothing in this opinion should foreclose any pre-trial resolution of the infringement issue that is otherwise substantively and procedurally appropriate. *Cf. id.* at 1337 (affirming district court's grant of summary judgment of noninfringement of design patent).

B.

Coleman also challenges the district court's exclusion of its expert, Peter Bressler. We review a district court's exclusion of expert testimony under the law of the regional circuit, here the Ninth Circuit. *Proveris Sci. Corp. v. Innovasystems, Inc.*, 536 F.3d 1256, 1267 (Fed. Cir. 2008). The Ninth Circuit reviews a district court's exclusion of an expert for an abuse of discretion. *Cabrera v. Cordis Corp.*, 134 F.3d 1418, 1420 (9th Cir. 1998).

District court judges perform a gatekeeping role for expert testimony. They must ensure that expert testimony is reliable and that the testimony "relate[s] to scientific, technical or other specialized knowledge, which does not include unsubstantiated speculation and subjective beliefs." *Diviero v. Uniroyal Goodrich Tire Co.*, 114 F.3d 851, 853 (9th Cir. 1997) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590 (1993)); *see also* Fed. R. Evid. 702.

The district court here excluded Mr. Bressler, an industrial design consultant with four decades of industry experience, because he had "no experience whatsoever in the field of [personal flotation devices]." J.A. 27. The record supports the district court's conclusion. Mr. Bressler, when asked to evaluate Sport Dimension's expert's testimony on one aspect of the device's function, stated: "I'm not an expert on personal flotation devices." Appellee's Br. 45. His proposal for alternative armband designs, by Mr. Bressler's admission, was based on his "imagination." *Id.* at 45–46. And he further admitted that he had no work experience with wearable buoyancy devices before serving as an expert. *Id.* at 45–47. In light of Mr. Bressler's admitted inexperience and unfamiliarity with the very subject on which Coleman sought to rely on his testimony, the district court did not abuse its discretion in excluding his testimony. *See Cabrera*, 134 F.3d at 1420.

CONCLUSION

For the reasons stated above, we reject the court's claim construction, vacate its judgment of non-infringement, affirm its exclusion of Coleman's expert, and remand for proceedings consistent with this opinion.

**AFFIRMED-IN-PART, VACATED-IN-PART, AND REMANDED**

COSTS

No costs.